Good morning. I'm Thomas Masucci representing Mr. Sesay in this petition for review. The issues that this case really focuses on and that I've been raising for three years since I was in front of the IJ are the issues of materiality and duress. How would you read material support to support your position? Well, in the President's decision of Singh Kaur there was a discussion of material support. I happened to find the dissent's discussion of material support to be a little more nuanced. Yeah, but that's a problem. No, I understand that. It's amazing how often dissents are that way. The Court of Appeals math, two against one. Right. Well, the majority defined it as having some logical connection with the support has to move the ball down the field for terrorism. No, but here you had the guns. He was carrying guns. I mean, he was carrying water, maybe, but he's carrying guns and doesn't that move the ball down the field? Well, it could. I would first note, Your Honor, that transporting weapons is certainly something that's an issue, but the board, just to address the way the board characterized the material support in its very short analysis, we concluded the Respondent's actions constitute material support inasmuch as he was providing them sustenance in transporting weapons. He never provided sustenance. This was made clear in front of the IJ. This was made clear, I thought, in my brief to the board. He was carrying water. He was made to carry weapons and other supplies, such as ammunition, drinking water, food, even though he didn't want to. Is that correct? That's correct. Isn't that sustenance? Well, providing sustenance, my understanding of providing would be he... Oh, I see. Actually giving them as compared to carrying. And it was made clear during the hearing, I think it's on page 119, did you ever give the rebels any weapons? Did you ever give the rebels any ammunition, any food, any information? So in terms of sustenance, I think that mischaracterizes what happened. Now, transporting the weapons, I think, as I again argued, tried to argue before the IJ and also before the board that anything that he did, any kind of support that he gave has to be looked at in relationship to the overall enterprise of the RUF. It was brought up during the hearing that, you know, that if he weren't there, that the rebels would have been able to carry these things themselves. And so then you're talking about maybe a fatigue... Why does that matter? Well... It's like a but-for causation? It matters in the sense, your honor, that if they had been unable to move the weapons without the help of CSA... I frame my question, I'm sure, in a very inartful way. I mean, to what does that relate? Are you suggesting that relates to materiality? Materiality, correct. In the sense that he carried the weapons... Well, but there's no sine qua non requirement in the statute. There's no language of that kind that would seem to suggest that sort of limitation on materiality, is there? Well, there really isn't any unfolding or clarity about the notion of materiality in the statute at all. Well, we have defined it. We have given some examples which make it... make this seem to fit. Could you address the two other issues with respect to duress? One of which is... I'd like to know what your view is of Fedorenko because it seems to me it would mandate a finding that duress is not an exception here because it confronted the exact type of situation we have here where there is another section that does talk about involuntariness as being a way out. That's number one. Number two, I'd like you to address why the fact that you could have filed for a waiver, that you could have sought a waiver, makes a difference here. Well, if it's all right with you, Your Honor, I'd like to address the second issue first. Okay, sure. There is still no waiver procedure in place that I'm aware of. Really? Last February. How long is that safe harbor provision? That's 212b3b, I think. How long has that safe harbor provision been there? It's been there since the Patriot Act, I think. And starting in 2008, the Department of Homeland Security started circulating memos and so on. Last February in the Federal Register, there was what a lot of people in the private bar thought was a big step to announcements that the Department of State and the Department of Homeland Security were going to look at these waiver applications. But the waiver is in place. There is a provision provided for a waiver. You're just saying you don't know where to file it? Well, you have a statute, but you don't have a regulation. That's what you tell us. Why don't you write a letter to the Secretary of State, to the Secretary of Homeland Security? And the USCIS has discretion to determine whether the criteria are met, so you think it put it before them. What about the mechanisms for waiver that DHS put in place in 2007? Those, I think those are specific to certain groups, certain terrorist organizations. I don't think. You looked at the procedures spelled out there and thought they were not applicable? No, I don't think they are applicable, actually, Your Honor. But the other issue with the waiver, Your Honor, is that there's no guarantee that even if we were to apply for a waiver, that we would get it. No, but it's there. No, no, I understand that. It doesn't look too stringent to me. It seems like it might fit. Right, absolutely. If there were a procedure in place, I would follow it, and I've contacted the, I've spoken to the trial attorney's office in New York, I've contacted the Chief Counsel's office in New York, and no one seems to know anything about this. Given the lack of, one might say, statutory authority to assist you otherwise, or at least the statutory interpretation question that exists here, and the clear statutory provision of administrative waiver safe harbor, doesn't it make sense that one would avail himself of that clear statutory provision, even in the absence of administrative rules? Isn't it better to seek what you know is there in the statute as opposed to what may be arguable in the statute? Well, Your Honor, as far as I know, the agency has not created any mechanism for even initiating a waiver. Does the fact that there is a waiver process help us at all in reasoning through whether we should read in a duress exception? I mean, if you have to file a waiver in order to qualify for it, why would we just, why would we read it generally into the statute? Well, because, Your Honor, I think that there may be cases where if there were a duress, if we were to construe it, or the board were to construe it, or the court were to construe a duress exception in the statute, there might be people that would qualify for that that would not qualify for the waiver. But doesn't its existence argue against establishing a duress exception that does not textually appear within the statute? I know that's certainly the government's argument, and they've raised this here and they've raised this in other cases, that the existence of the waiver argument, you know, mitigates against that kind of construing the existence of a duress aspect of the statute. Regarding Fedorenko, Your Honor, I think the, this is the, I think it's the Displaced Persons Act that was, that was, the board was erroneously relying upon. I think those two, the two clauses, one with a, I'm telling you, 1182 D3BI is voluntarily and knowingly requiring a voluntary and knowing requirement, whereas there is no such thing in this provision. Mr. Restici, let me ask you another way, because you don't, in your briefing, you really don't grapple with the statute itself. I mean, you're relying heavily on the Second Circuit's remand, and I, do you concede that the statutory language and principles of statutory construction don't support a duress exception in the statute? No. I would argue that all of the exceptions that are laid out in 1158 regarding asylum, the ones that existed before the material support exception, all involve some moral, a sense of personal culpability. But the point is, if in another section of the statute Congress has said, oh, but if that person isn't culpable or isn't of age, then it won't apply, and they know how to do that. And I'm referring to the membership of a totalitarian party in Section 1182 A3D, which is really close to what we have here, shall not apply to an alien because of membership or affiliation of the alien establishes to the satisfaction of consular office that the membership or affiliation is or was involuntary or is or was solely when under 16 years of age or for purpose of obtaining employment, food, rations, or other essentials. So under Fedorenko, when Congress knew how to say something and did say something in one section, and in a related section said nothing, a principle of statutory construction is to say that, OK, when they said nothing, they meant that that would not apply. Well, again, the statutory provision that you're citing, Your Honor, is not part of the INA. That's part of the old DPA. And it was actually, in Neguse, the Supreme Court basically said to the board, you are relying on this. Well, they were relying on silence in Neguse. There wasn't any other, there wasn't any provision. Well, the board felt that they had to find that there was no duress exception because one had it, this is in the old DPA, one paragraph had it and the following paragraph did not have the duress exception. No, and we have that here. Subsection DD, as Judge Rendell is pointing out, has a voluntariness provision. And even closer to the statutory language that we're analyzing, there's also a carve terrorist organization. Where is that, the scienter, where is there a voluntariness requirement in the statute as to the providing of material support? I'm not sure I understand your question, Your Honor. Where we have explicit language in adjoining subsections of this statute where Congress has explicitly required that there be knowledge or that there be voluntariness, our canons of statutory construction say that we infer from that that Congress intended them here and by omission intended not to include them in the other section. When we're looking at material support, we, by virtue of those canons, infer that Congress purposely did not carve out a duress exception. There's no voluntariness requirement. But again, you're correct, I probably over relied on the Second Circuit case, but as there is this element of personal culpability that this is really something that the agency should, there's ambiguity in the language. I understand your canon, the way that you're applying the canon of statutory interpretation, I understand that, but there is still some ambiguity. So do you want us to just hold off on this until the BIA issues a presidential opinion, which they clearly haven't done in response to the Second Circuit one? Well, I think in light of the ambiguity that the BIA is definitely, the agency is, the executive is the body to do that. Okay. Do you reserve rebuttal? Yes, five minutes. Five minutes? Okay. Thank you, Your Honors. Good morning. Jeffrey Elmenken, United States Department of Justice for the Attorney General. As far as, may it please the court, as far as the materiality issue, I would rely on what we've put in our brief, except to note that the court in Sinkower did point out that material support includes logistical support, physical and logistical support that enables modern terrorist groups to operate. And the support here was what defense counsel in the record below called sweat equity, the movement of weapons and goods, and certainly the movement of weapons to guerrillas in the jungle who are fighting against the government does logically bear upon their terrorist activities. Do you agree, especially in light of the NRASK, that there is a de minimis exception to the bar? It's not implicated here, and I would not agree that there even exists one. Didn't the BIA acknowledge in NRASK that there was, that materiality has to mean something? I think what the court, the board rather, in SK said was quite the opposite, was that Congress has not given any indication and they did not find any reason to go into it. So the board in SK did not find a de minimis exception and has never done so. But what is clear here is that the movement of weapons is logically tied to men who need guns to fight the government, and by doing this, Mr. Sesay freed up the guerrillas from having to do what he was doing for them. And in fact, the Supreme Court in HLP, we used the quote in our brief, saying that material support is valuable by definition in that it, quote, frees up other resources, close quote, within an organization. And this is a good example of that. As far as, unless there are any other questions on materiality. Isn't it the case, I mean, we're not going to make superfluous a word that Congress put into the statute, right? Materiality has to mean something. It does, and in fact, the board here cited the Sinkhour decision, or the page of the Sinkhour decision, where the court said that it has some logical connection with consequential facts. So that's the direct support. I mean, either it can mean, when we think direct versus indirect kind of support, or it could mean the amount of support. In Sinkhour, we seem to have rejected the idea of it being limited to direct support, and arguably the Supreme Court did that in the Humanitarian Law Project as well. But what about the second option, the amount of support? So that, for example, providing a cup of water or having $4 and a sandwich taken from you don't constitute material support. Would you agree that far? No, and in fact, I don't think Congress drew a distinction between direct and indirect, because there's a very clear line of cases, let's say dealing with money, the fungibility of money, that giving money to a daycare center operated by a terrorist group still supports the terrorist activity. We're bound by Sinkhour. Yes. In Judge Krause's example of giving water or a sandwich, would that be material under Sinkhour? I believe it would be. Having logical connection with the consequential facts? Significant or essential? We're drawing an extreme circumstance, which is represented here. Well, we are drawing, but I think the question is, is there a de minimis, if not exception, the definition doesn't include de minimis, does it? No, the definition doesn't. In the definition we've given? No, no, and in an extreme circumstance, that's where the waiver provision could be dealt with. In the totality of the circumstances, the secretary of DHS could waive that, but I would not say that. Are we bound by the immigration judge's statement as a finding of fact that says they provided significant logistical support? I think the board tamped that down a little bit, but there's no question that it was logistical support. Did their operations hinge upon one man's actions? I don't think so, but when you're in the jungle firing at government soldiers, you need your weapons, and he helped transport them. There's no requirement that he procure them, and that's discussed in the record as well, but the movement of those, the carrying of those, the provision in that he transported them, I think is certainly included within the board definition. As far as the Fedorenko discussion, I think that is particularly apt because as far as the duress issue goes, there are at least three different areas in the subsections of this statute that do show that Congress is mindful of when intent and when knowledge were at issue and included them when they were intended to, when it wanted, when Congress wanted them to be a factor, and they're most definitely not present in the material support section. Can you address the point raised by your colleague that there's no mechanism to apply for a waiver? My understanding is that there's no application per se, but waivers are granted. I've seen, and it's somewhat anecdotal, that there have been 10,000 since 2007. 10,000 waivers granted? That is my understanding. I've seen that figure. Well, then somebody's filing it. Again, it's anecdotal, but I have seen, I have had cases where defense counsels do contact local counsel and provide them information, and they do get considered. USCIS and DHS do review matters and do grant waivers where they're in consideration. My understanding also is that in the Eye case, the Second Circuit case, Eye, I believe, has been granted an exemption, although I would need to confirm that. So it's out there, and the very fact that it exists, to read a defense into the statute would render the waiver provision superfluous because Congress would never have had to create that if it was an element of the statute. We don't have to determine, though, that it results in superfluity, do we? I mean, we can simply apply rules of statutory construction and determine that Congress intended not to include a duress exception. Very much so, Your Honor. In the context of it, the idea that it would be superfluous weighs on it, but the plain language of it, I would agree with Your Honor's statement. Since this issue is pending before the BIA, presumably for a precedential decision, does it make sense for us to address it on the merits, or should we wait for a precedential decision from the BIA? The three circuits have considered this and have found that there's no duress exemption, and the Anacomy decision from the Ninth Circuit and the Marihona decision from the Fourth Circuit, and to a much lesser extent the Alturo case in the Eleventh, have done a de novo review of the statute and have concluded, based pretty much on how we argue in our brief, that the plain language is sufficient, and the Court is certainly capable of conducting a de novo review. If this is a plain language statutory construction analysis, what can the BIA do that an Article III court can't do, or, I will hazard to suggest, can't do better? Well, precisely, and we make the point in our brief, that when the plain language controls, then deference is not an issue. We're not deferring to the Board, but the fact that this was not a precedent decision doesn't mean that the Court can't review it. It certainly can, and we would encourage the Court. The issue, and its essentials, is the Ninth, the Eleventh, and the Fourth have found that the statute reads with no duress exemption. There's been no argument made that the plain language requires the opposite conclusion. So if we're going to go off into a circuit split, I think we need a lot clearer evidence than exists here, and it's not there. It's not there. As a practical matter, Val, the Second Circuit remanded I to the BIA, correct? Yes. For them to issue a presidential opinion, if you're correct that I has gotten a waiver, a duress waiver, that case is probably going away, would you think? That would be the logical conclusion of that. But regardless of how the Second Circuit chose to do this, it's not necessary to go that way. Other circuits have gone away, and we would certainly recommend that this Court follow suit. Unless there are any other questions, I'll yield back my time. Thank you. Thank you. Mr. Masucci. No, no, I actually don't have anything on rebuttal, but I'm here for questions if anyone has. Anything further? I think we're good. Okay. Thank you very much. Thank you very much, counsel. Take the matter under advice.